IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RONNIE PAUL THREADGILL, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | Civil Action No. 3:05-CV-2217-D |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

MEMORANDUM OPINION
AND ORDER

Petitioner Ronnie Paul Threadgill ("Threadgill"), convicted and sentenced to death for capital murder, petitions the court for a writ of habeas corpus based on five grounds. Concluding that Threadgill has failed to demonstrate that he is entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, the court denies his petition for a writ of habeas corpus and dismisses this action with prejudice.

I

The background facts and procedural history of Threadgill's case are described by the Texas Court of Criminal Appeals ("TCCA") in its published opinion on direct appeal. *See Threadgill v. State*, 146 S.W.3d 654, 661-62 (Tex. Crim. App. 2004). The court will add to the TCCA's account the background facts and procedural history that are pertinent to this court's disposition of

Threadgill's federal habeas petition.

On April 14, 2001 Threadgill shot and killed Dexter McDonald ("McDonald"). *Id.* at 661. He was charged with capital murder—committing murder in the course of committing and attempting to commit a robbery of McDonald. Robert C. Dunn, Esquire ("Dunn") and Rickey D. Jones, Esquire ("Jones") were appointed to represent him.

During the guilt-innocence phase of the trial, evidence was introduced that Threadgill maintains would have entitled him to a jury instruction on the lesser-included offense of felony murder. Had he been convicted of felony murder rather than capital murder, he would not have faced the death penalty. His trial counsel did not request such an instruction or object to the trial court's failure to give one. The TCCA held on direct appeal that Threadgill was not entitled to the instruction. Threadgill contends his trial counsel were ineffective for failing to request such an instruction or to object to the trial court's failure to give one, and that the trial court committed constitutional error by failing to give such an instruction even in the absence of a request or objection.

During the punishment phase of the trial, the State introduced evidence that, in June 1998, Threadgill had been indicted in Limestone County, Texas for the offense of aggravated assault of Erik Martin ("Martin") with a deadly weapon. (The record contains

evidence that rival gang members had fought during a Juneteenth Celebration on June 19, 1998 at Comanche Crossing, during which multiple persons were shot.)  The case was dismissed over one year later, in August 1999, on the Limestone County District Attorney's motion,[1] which cited "CONFLICTING EVIDENCE" as the reason for seeking dismissal.  Threadgill's counsel had moved unsuccessfully to suppress this evidence so that the State could not introduce it during the punishment phase.

The State called Cassey Leon Forge ("Forge"), a person who had been present at the Comanche Crossing incident, to testify that he had witnessed Threadgill shoot Martin.  During the investigation, Forge had identified Threadgill through a photo lineup.  Forge also testified that he gave a statement to Limestone County Sheriff's Department Chief Deputy R.T. Beck, Jr. ("Deputy Beck") in which he identified Threadgill as the shooter, and he stated that he was positive about his identification.

Deputy Beck testified that he had investigated the incident and had obtained a statement from Forge; Forge had identified Threadgill from a photo lineup; Threadgill was positive in his identification and in no way hesitant; and Threadgill never recanted the identification.  Deputy Beck also testified that

_____

[1]The motion refers to the "County Attorney."  Tr. 20:Exh. 11. (Citations to "Tr." are to the volume and, if applicable, page of the transcript of Threadgill's trial.)  As do the parties, the court will refer throughout this memorandum opinion and order to the Limestone County District Attorney.

Threadgill was charged with the offense but that the charge was later dropped; that he believed Threadgill had been jailed for one year, although he could not be exact; and that most of the victims and perpetrators of the shooting incident had extensive criminal backgrounds.   On cross-examination, defense counsel introduced through Deputy Beck the dismissal of the Limestone County charge. Defendant's exhibit 11 contained the following motion filed by the prosecutor: "Now comes the County Attorney on this the 27th day of July, 1999 and asks the Court to dismiss the above entitled and numbered Criminal Action, for the following reasons, to-wit: CONFLICTING EVIDENCE."  Tr. 20:Exh. 11.[2]

During closing argument, the State prosecutor referred to the Limestone County charge and criticized "prosecutors that don't take these cases and take them seriously and take them to juries."  He implied that the decision not to prosecute Threadgill in Limestone County was because the victim was "probably nobody" who "probably had a criminal record."  Tr. 17:115.  The State's attorney urged the jury not to act similarly, asserting that Threadgill had "shot another guy."  *Id.*   Threadgill maintains that, had his counsel provided effective assistance, they would have performed a more complete investigation and produced evidence to refute the assertions that he had shot Martin and that the charge against him

---

[2]As noted, *see supra* note 1, citations to "Tr." are to the volume and, if applicable, page of the transcript of Threadgill's trial.

had been dropped due to the Limestone County District Attorney's unwillingness to prosecute a case involving a victim who was a "nobody."  He contends the State through witness testimony and the prosecutor's closing argument left this false impression with the jury.

Also during the punishment phase, Threadgill called Gilda Kessler, Psy.D. ("Dr. Kessler"), a clinical psychologist, as an expert witness to testify on the issue of mitigation.  The State responded by calling Lisa Clayton, M.D. ("Dr. Clayton"), a psychiatrist, as a rebuttal expert to opine, *inter alia*, that Threadgill would be a future danger to society.  Threadgill did not re-call Dr. Kessler to rebut Dr. Clayton's opinion testimony. Threadgill contends his trial counsel were ineffective for failing to secure a Tex. R. Evid. 705 hearing at which they could have attempted to preclude Dr. Clayton from expressing such opinions and for not effectively cross-examining her or rebutting her testimony by re-calling Dr. Kessler.

On July 19, 2002 Threadgill was found guilty of capital murder.  *See Threadgill*, 146 S.W.3d at 660.  Based on the jury's affirmative answers to the two punishment-phase special issues, the trial court sentenced him to death.  *Id.*  On October 13, 2004 the TCCA affirmed his conviction and sentence on direct appeal.  *Id.* at 660, 673.  Threadgill did not petition the Supreme Court of the United States for a writ of certiorari.

Concurrent with his direct appeal, Threadgill applied on May 13, 2004 in the state habeas court for a writ of habeas corpus.[3] On March 8, 2005 the state habeas court, after finding no basis for an evidentiary hearing, signed and entered its findings of fact and conclusions of law, recommending that habeas relief be denied. *See Ex parte Threadgill*, No. 28,207 (13th Dist. Ct., Navarro County, Tex.).[4]  On May 18, 2005 the TCCA remanded the cause to the trial court for supplementation of the habeas record and entry of supplemental findings. *Ex parte Threadgill,* No. WR-61,645-01, 2005 WL 1208947, at *1 (Tex. Crim. App. May 18, 2005) (per curiam) (unpublished order).   The trial court signed and entered supplemental findings and conclusions on August 16, 2005. *Ex parte Threadgill*, No. 28,207 (13th Dist. Ct., Navarro County, Tex.).  On October 5, 2005 the TCCA denied relief based on the state habeas court's findings and conclusions and on its own review of the record. *Ex Parte Threadgill*, No. WR-61,645-01, 2005 WL 2445431, at *1 (Tex. Crim. App. Oct. 5, 2005) (per curiam) (unpublished order).[5]

---

[3]"In Texas, habeas proceedings run concurrently with direct appeal." *Hatten v. Quarterman*, 570 F.3d 595, 599 (5th Cir. 2009) (citing Tex. Code Crim. Proc. Ann. art. 11.071 § 4(a)).

[4]"Texas trial courts only make recommendations to the [TCCA] but do not rule on habeas petitions." *Id.* at 599 n.3 (citing *Ex Parte Brown,* 205 S.W.3d 538, 546 (Tex. Crim. App. 2006)).

[5]Throughout the remainder of this opinion, except as the context otherwise requires, the court will refer to the "state habeas court" as a single tribunal, although it recognizes that the

On November 10, 2005 Threadgill filed in this court a motion for appointment of counsel, which the court granted.[6]  On September 23, 2006 he filed the instant petition for a writ of habeas corpus, seeking relief on the following five grounds:

1.    He was denied effective assistance of counsel under the Sixth and Fourteenth Amendments when his trial counsel failed to adequately investigate and challenge the State's use of an extraneous offense to enhance his sentence of death.

2.    The State created the false impression that Threadgill had committed the offense alleged in the Limestone County charge.

3.    Threadgill was denied due process of law when the trial court failed to charge the jury on the lesser-included offense of felony murder.

4.    Threadgill was denied effective assistance of counsel under the Sixth and Fourteenth Amendments when his trial counsel failed to request that the jury be charged on the lesser-included offense of felony murder.

5.    Threadgill's rights under the Sixth and Fourteenth Amendments were violated because defense counsel failed to object to the testimony of Dr. Clayton and effectively cross-examine and rebut her testimony.

Respondent answered on February 12, 2007.  The magistrate judge filed her recommendation on August 19, 2008, and Threadgill

_____

TCCA independently determined that habeas relief should be denied.

[6]Threadgill also filed a motion for leave to proceed *in forma pauperis*, but the magistrate judge denied this motion as moot because Threadgill paid the filing fee.

filed his objections on September 16, 2008.[7]  On July 1, 2009 this case was transferred to the undersigned's docket, and on August 4, 2009 the court heard oral argument.

## II

Threadgill's habeas petition is governed by AEDPA.[8]  28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim——
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.*  This court's determination requires deference to the state

---

[7]Before this petition was transferred to the undersigned's docket, Threadgill's petition was considered by a magistrate judge who filed findings, conclusions, and a recommendation that the petition be denied.  Because review of the magistrate judge's recommendation is *de novo*, the court is denying Threadgill's petition based on this memorandum opinion and order, without considering the magistrate judge's findings, conclusions, and recommendation or Threadgill's objections thereto.

[8]Threadgill maintains that ground one of his petition is not governed by AEDPA.  The court addresses this contention *infra* at § VI(D).

habeas court's adjudication of Threadgill's claims unless the adjudication is flawed under at least one of these provisos. *See, e.g., Avila v. Quarterman*, 560 F.3d 299, 304 (5th Cir.), *petition for cert. filed*, (U.S. June 29, 2009) (No. 09-5070). "[A] federal court's review of a claim adjudicated in a state court is deferential[.]" *Summers v. Dretke*, 431 F.3d 861, 868 (5th Cir. 2005).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant [a writ of habeas corpus] if the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "A 'run-of-the-mill state-court decision applying the correct legal rule' would *not* fit within this exception as 'diametrically different' or 'opposite in character or nature' from Supreme Court precedent." *Beazley v. Johnson*, 242 F.3d 248, 256 (5th Cir. 2001) (quoting *Williams*, 529 U.S. at 406).

"Under the 'unreasonable application' clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal habeas court making the 'unreasonable

application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.   "A state court's decision will be based on an unreasonable application of clearly established federal law when it is objectively unreasonable." *Kutzner v. Johnson*, 242 F.3d 605, 608 (5th Cir. 2001).   "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410.   "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "[A] federal court is not to substitute its judgment for that of the state court.   Rather under AEDPA, federal habeas relief is proper only if the state habeas court applied federal law in an 'objectively unreasonable' manner." *Schaetzle v. Cockrell*, 343 F.3d 440, 447 (5th Cir. 2003).

Threadgill's ineffective assistance claims present mixed questions of fact and law. *See, e.g., Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998) (holding that both prongs of the test of *Strickland v. Washington*, 466 U.S. 668 (1984), "present a mixed question of law and fact").   "'[M]ixed questions of law and fact are reviewed under § 2254(d)(1)[.]'" *Martin v. Cain*, 246 F.3d 471,

475 (5th Cir. 2001) (quoting *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998)).  This means that Threadgill must demonstrate that the state habeas court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.

"'[A] federal habeas court is authorized by Section 2254(d) to review only a state court's "decision," and not the written opinion explaining that decision.'"  *Summers*, 431 F.3d at 868 (quoting *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003); *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (per curiam) (en banc)); *Blanton v. Quarterman*, 543 F.3d 230, 236 (5th Cir. 2008) ("[W]e review only the ultimate decision of the state court, and not the specific contents of its reasoning or opinion." (citing cases), *cert. denied*, ___ U.S. ___, 129 S.Ct. 2382 (2009)).  When, as here, the TCCA denies a habeas application without written order on findings of the trial court, this court "(1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law." *Schaetzle*, 343 F.3d at 443 (citing *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002); *Robertson v. Cain*, 324 F.3d 297, 303 (5th Cir. 2003)).

"Factual findings of the state court are presumed to be correct[.]" *Gardner v. Johnson*, 247 F.3d 551, 557 (5th Cir. 2001).

A federal habeas court must "defer to them unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Id.* (internal quotation marks omitted) (quoting *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000)). "[T]he presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) (citing cases). "When challenging a state court's factual determinations, a petitioner must rebut this presumption of correctness by 'clear and convincing evidence.'" *Barnes v. Johnson*, 160 F.3d 218, 222 (5th Cir. 1998) (quoting 28 U.S.C. § 2254(e)(1)).

### III

The court turns initially to ground two of Threadgill's petition,[9] and it defers consideration of ground one until it addresses his ineffective assistance claims.[10]

----

[9]In the state habeas court, this was ground three.

[10]Respondent argues that this ground is procedurally barred because it was denied in state court based on an independent and adequate state-law ground. His counsel conceded at oral argument, however, that, considering the state habeas record, it is not the most solid procedural bar. This court is only "precluded from granting habeas relief where the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state-law procedural ground." *Parr v. Quarterman*, 472 F.3d 245, 253 (5th Cir. 2006) (citing *Cotton v. Cockrell*, 343 F.3d 746, 754 (5th Cir. 2003)). "[T]he last state court rendering a judgment in the case [must] 'clearly and

A

Threadgill maintains that the State created the false impression that he had committed the offense alleged in the Limestone County charge, thereby denying him his Fourteenth Amendment right to due process of law.  He posits that, in arguing the future dangerousness special issue during the punishment phase, the prosecution created the impression that he had definitely been the shooter in the Limestone County incident, and that the aggravated assault charge had been dismissed only because the victim was a "nobody."

Threadgill cites the following testimony that the State elicited from Deputy Beck on direct and redirect:

---

expressly' state[ ] that its judgment rests on a state procedural bar."  *Harris v. Reed*, 489 U.S. 255, 263 (1989) (some internal quotation marks omitted) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)).  When the state habeas court—the last state court to consider this ground—rejected the claim, it simply recited as a descriptive factual finding that "[t]his issue was to all intents addressed by the Court of Criminal Appeals and rejected."  State Hab. Ground No. 3 Find. No. 2.  In its conclusions of law, it addressed the merits of the claim, not a procedural bar.  *See* State Hab. Concl. Law 1 and 5.  And it neither stated nor suggested that it was addressing the merits in the alternative.  There is no clear and unambiguous indication that the state habeas court was itself basing its denial of relief on an independent and adequate state-law procedural ground or that it was adopting the procedural decision of the TCCA as the basis to deny habeas relief.  The court therefore holds that the claim is not procedurally barred.

- 13 -

[Direct]

Q.   Was Ronnie Threadgill charged with that offense?

A.   Yes, sir, he was.

Q.   Was that offense later dropped?

A.   As far as I'm aware.

Q.   Did Ronnie Threadgill stay in jail approximately a year before it was dropped?

A.   I believe so, I couldn't be exact.

Q.   Was [sic] most all of the people, the victims, and the perpetrators, did they have extensive criminal records?

A.   Yes, sir.

Tr. 16:27.

[Redirect]

Q.   Sergeant Beck, the reason for dismissing this case was listed by the District Attorney of Limestone County as conflicting evidence; is that correct?

A.   I believe that's correct.

Q.   Do you have conflicting evidence in a lot of cases?

A.   Yes, sir.

Q.   Are all cases that have conflicting evidence, are they dismissed?

A.   No, sir, not that I'm aware of.

Q.   As much as we don't like to admit it, are sometimes cases dismissed because of the, who the victims are or what they've done in the past?

- 14 -

[Relevance    objection    and    court    ruling
omitted.]

A.   Yes,  sir,  I  think  that's  entirely
     possible.

*Id.* at 28-29.

During  closing  argument,  the  prosecutor  asserted  the

following:

> You  heard  what  Warden  Price  said.  You
> remember  it.  So,  what  do  we  do?  Is  it
> justice  to  say  Dexter  McDonald's  life  meant
> nothing?  Don't  do  that.  I  guarantee  you  if
> you  do  that  you  walk  out  of  here,  you  can't
> walk  out  of  the  courtroom  and  look  those
> people  in  the  face.  It's  just  not  right.
> It's  not  fair,  and  it's  not  justice.  If
> that's  what  we're  suppose[d]  to  be  doing
> because  it  scares  me  to  death  when  something
> like  this  happens  and  we  don't  get  justice,
> and  we  have  prosecutors  that  don't  take  these
> cases  and  take  them  seriously  and  take  them  to
> juries.  Don't  do  like  the  Limestone  deal.  He
> shot  another  guy.  Yeah,  he's  probably  nobody.
> He  probably  had  a  criminal  record.  They  said
> why  should  we  waste  our  time  with  that?  I
> could  have  done  this  in  this  case.

Tr. 17:115.

B

The  state  habeas  court  found  that  "[t]he  jury  was  fully  aware

of  the  conflicting  nature  of  the  evidence  and  fully  capable  of

properly  weighing  the  evidence."  State  Hab.  Ground  No.  3  Find.  No.

3.  It  concluded  as  a  matter  of  law  that  "[n]o  false  impression  was

created  by  State's  counsel  with  respect  to  the  'Limestone  County'

incident.  Sufficient  evidence  was  presented  as  to  the  conflict  and

inconsistency  of  such  allegations  that  the  jury  could  effectively

weigh the probative value, if any." State Hab. Concl. No. 5.

Threadgill contends that the state habeas court's findings and conclusions are contrary to, and unreasonable applications of, *Giglio v. United States*, 405 U.S. 150 (1972), and *Napue v. Illinois*, 360 U.S. 264 (1959), and that the state habeas adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Regarding the requirement that the State offered false testimony and argument, he posits that there is no evidence that the jury was fully aware of the conflicting nature of the evidence and fully capable of properly weighing the evidence because, as more fully discussed in ground one of his petition, his trial counsel failed to properly investigate, develop, and present evidence of his innocence of the Limestone County charge, and the state habeas court's finding presupposes a full and complete investigation of that extraneous offense and presentation of those facts and circumstances to the jury; the State prosecutor, through the testimony of Deputy Beck and in closing argument, gave the jury the false impression that the Limestone County charge had been dismissed because the victim was a "nobody" and/or because Threadgill had been in jail for one year and/or because the Limestone County District Attorney was derelict in his duty to prosecute, none of which was true; the evidence revealed that the Limestone County District Attorney

dismissed the charge because there was evidence that Threadgill was innocent; Deputy Beck's testimony and the prosecutor's closing argument created the false impression that there was no question that Threadgill was the shooter, but that the case had been dismissed because the victim was a "nobody" and because the Limestone County District Attorney was derelict in his duty in not wanting to waste time prosecuting someone who had shot a person who had a criminal record; and the record developed in the state habeas court contradicts the assertions in the State's closing argument and Deputy Beck's testimony that Threadgill unquestionably was the shooter, the Limestone County prosecutor did not take the case seriously, or the Limestone County charge was dismissed because the victim was a "nobody" with a criminal record, and there is nothing in the record to show that the jury was fully aware of the conflicting nature of this evidence and fully capable of weighing it.

Regarding the State's failure to correct a knowing falsity, Threadgill maintains that the prosecution failed to correct the false impression that it was 100% certain that Threadgill was the shooter and that the case was dismissed because the victim was a "nobody," and a simple telephone call to the Limestone County District Attorney would have revealed the truth.

Concerning the reasonable likelihood that the falsity affected the jury verdict, Threadgill contends that it did affect the

verdict because Deputy Beck's testimony and the State's closing argument were material, and, without the Limestone County charge, the State's evidence of future dangerousness was limited to the facts of the murder for which he was on trial, old misdemeanor assaults, and opinion testimony.  He contends that had the jury heard the evidence of his actual innocence, it would have been influenced to answer the future dangerous special issue in his favor.

C

Threadgill is not entitled to relief based on ground two of his petition.  He recognizes that, under *Giglio* and *Napue*, he must show that the State presented false testimony, or false statements during closing argument, that the government knew the testimony or statements were false, and that the testimony or statements were material.  Threadgill has either failed to show that the State offered false testimony or false statements during closing argument, or that the State knew it was doing so or that such knowledge can be imputed to the State, or that the prosecutor's closing argument was so prejudicial that the state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment.

1

First, Threadgill has failed to establish that Deputy Beck gave false testimony.  In fact, his habeas counsel conceded at oral

- 18 -

argument that he did not know of anything false about it.

The testimony of Deputy Beck that Threadgill cites in support of ground two of his petition contains the following factual assertions: Threadgill was charged with aggravated assault in Limestone County; as far as Deputy Beck was aware, that charge was later dropped; Deputy Beck believed that Threadgill had stayed in jail approximately one year before the charge was dropped, but he could not be exact; most of the people——the victims and the perpetrators——in the incident had extensive criminal records; Deputy Beck believed the reason the District Attorney of Limestone County listed for dismissing the case was conflicting evidence; Deputy Beck had seen conflicting evidence in a lot of cases, and he was not aware that all cases that had conflicting evidence were dismissed; and Deputy Beck thought it was "entirely possible" that cases were sometimes dismissed because of who the victims were or what they had done in the past.  Threadgill has not shown that any of this evidence was false much less that the state habeas court made an unreasonable decision in rejecting his state habeas application in this respect.

Second, Threadgill has not established that the prosecutor made false statements in closing argument.  The prosecutor's assertion that Threadgill was the shooter——i.e., "He shot another guy"——could have been based, not on Deputy Beck's testimony, but on the eyewitness testimony of Forge.  Forge testified that he had

been present on June 19, 1998, that he had seen Martin shot, and
that he had seen the person who shot him.  Forge stated that he had
identified the shooter through a picture lineup presented by Deputy
Beck.  And he acknowledged that he had given Deputy Beck a
statement in which he identified Threadgill as the person who shot
Martin.  He testified that he was positive in his identification.
He also acknowledged on cross-examination that he knew the charge
had been dismissed.  Deputy Beck corroborated parts of Forge's
testimony.  He testified that he had investigated the shootings and
had obtained a statement from Forge.  He also stated that Forge had
identified Threadgill from a photo lineup, that Forge was positive
in his identification and in no way hesitant, and that he had never
recanted the identification.

Nor has Threadgill shown that the prosecutor falsely suggested
that the Limestone County charge had been dismissed because the
victim was a "nobody" and/or because Threadgill had been in jail
for one year and/or because the Limestone County District Attorney
was derelict in his duty to prosecute.  Threadgill cites no passage
where the prosecutor stated that the charge had been dismissed
based on the length of time Threadgill had been in custody.  As to
his other complaints, the prosecutor was permitted to argue
reasonable inferences or deductions from the evidence.  *See*
*Dowthitt v. Johnson*, 230 F.3d 733, 755 (5th Cir. 2000) (habeas
case) ("We have held that '[i]n the context of closing argument, .

. . [the prosecutor is not] prohibited from reciting to the jury those inferences and conclusions she wishes the jury to draw from the evidence so long as those inferences are grounded upon evidence.'" (brackets and ellipsis in original) (quoting *United States v. Munoz*, 150 F.3d 401, 414-15 (5th Cir. 1998))); *Wilson v. State*, 7 S.W.3d 136, 147 (Tex. Crim. App. 1999) (Texas law) (holding that prosecutor is permitted to argue "reasonable deductions from the evidence"). There was evidence that Threadgill had been indicted for aggravated assault, that an eyewitness had identified Threadgill as the shooter, that the Limestone County District Attorney had moved to dismiss the indictment based on conflicting evidence, that most all of the victims and perpetrators had extensive criminal records, and that it was entirely possible that cases were sometimes dismissed because of who the victims were or what they had done in the past. Therefore, the prosecutor had a basis in the record to argue the inference or deduction that the Limestone County prosecutor did not take the case seriously and take it to a jury, and that the victim of Threadgill's shooting was "probably nobody" and "probably had a criminal record."

Third, to the extent the prosecutor misstated the record evidence in any respect, Threadgill must still show that the argument was so prejudicial that the trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment. The prosecutor's remarks must have

- 21 -

"'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (habeas case) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).

> [I]mproper jury argument by the state does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment. To establish that a prosecutor's remarks are so inflammatory, the petitioner must demonstrate that the misconduct is persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks.

*Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988) (habeas case) (addressing claim that closing argument was not supported by record evidence). Threadgill must show "that the [prosecutor's] misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." *Geiger v. Cain*, 540 F.3d 303, 308 (5th Cir. 2008) (brackets in original) (quoting *Jones*, 864 F.2d at 356) (reviewing district court decision under AEDPA standard), *cert. denied*, ___ U.S. ___, 129 S.Ct. 1996 (2009).

The state habeas court found that the jury was fully aware of the conflicting nature of the evidence and fully capable of properly weighing the evidence, and it concluded as a matter of law that no false impression was created by the prosecutor because

there was sufficient evidence presented regarding the conflict and inconsistency of such allegations that the jury could effectively weigh the probative value, if any.  Its decision was neither contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, nor was the decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Threadgill's argument that the jury was *not* able to assess the conflicting evidence is based on the premise that there was proof that should have been presented but was not.  Because this contention fails for reasons explained below, he cannot rely on this argument to establish a right to habeas relief.  Moreover, for the reasons explained *infra* in § VI(E)(3) (addressing the prejudice prong of his ground one ineffective assistance claim), the court holds that the state habeas court neither rendered a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, nor one that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

2

Threadgill also relies on a line of reasoning that is related to ground one of his petition.  He contends that his own counsel

- 23 -

failed to properly investigate, develop, and present evidence of his innocence of the Limestone County charge, that the state habeas record refutes the premises of the prosecutor's closing argument, and that the prosecutor could have determined the truth about the Limestone County charge through a telephone call to the Limestone County District Attorney.   In fact, as his habeas counsel emphasized at oral argument, the gravamen of ground two is that his trial counsel, by not properly investigating the Limestone County charge and presenting the results of the investigation at trial (and, to a lesser extent, that the State prosecutor by not contacting the Limestone County District Attorney), enabled the State prosecutor to mischaracterize the dismissal of the case by the Limestone County District Attorney as prosecutorial ineptitude rather than based on a true conflict in the evidence.   His habeas counsel urged during argument that, had this evidence been introduced during the punishment phase, the State could not have proved the extraneous Limestone County charge beyond a reasonable doubt.[11]

---

[11]At oral argument, the court questioned Threadgill's counsel about the assertion in his brief and at oral argument that the State was required to prove the extraneous offense beyond a reasonable doubt rather than to prove the future dangerous special issue beyond a reasonable doubt.   When the court inquired of respondent's counsel, he conceded that Texas law required the State to prove the Limestone County charge beyond a reasonable doubt. The court disagrees with Threadgill and respondent.
    The TCCA has held that "[w]hen offering an extraneous offense at the punishment phase of a capital trial, the State neither has to prove all of the elements of the extraneous offense nor prove

These arguments fail because Threadgill has not shown that *the State* knew or should have known of the evidence on which he relies. Ground two is based on the state habeas court's application of *Giglio* and *Napue*. Both cases focus on the disclosure obligations and conduct of the prosecution, not of defense counsel. Threadgill has cited no evidence that the State prosecutor actually knew of any facts that Threadgill's own counsel had failed to develop. Indeed, a fundamental premise of his related ground one——an ineffective assistance claim——is that this evidence was not developed at all.

Instead, Threadgill suggests that the prosecutor *should have known* of this information because a simple telephone call to the Limestone County District Attorney would have revealed the truth. But Threadgill has failed to show that the State had an obligation to contact another prosecutor's office to obtain this evidence. In his petition, he cites generally to the principle that due process is violated when false evidence goes uncorrected by a prosecutor

---

beyond a reasonable doubt that the defendant committed the extraneous offense." *Allen v. State*, 2006 WL 1751227, at *7 (Tex. Crim. App. June 28, 2006) (unpublished opinion) (footnotes omitted) (citing *Spence v. State*, 795 S.W.2d 743, 759 (Tex. Crim. App. 1990); *Adanandus v. State*, 866 S.W.2d 210, 234 (Tex. Crim. App. 1993)); *see also Garcia v. State*, 57 S.W.3d 436, 442 (Tex. Crim. App. 2001) ("As long as the punishment charge properly requires the State to prove the special issues, other than the mitigation issue, beyond a reasonable doubt, there is no unfairness in not having a burden of proof instruction concerning extraneous offenses." (quoting *Ladd v. State*, 3 S.W.3d 547, 574-575 (Tex. Crim. App. 1999) (internal quotation marks omitted))).

who knows or should have known of perjury.   The court recognizes
that the prosecutor has a "duty to learn of any favorable evidence
known to the others acting on the government's behalf in the case,
including the police." *Titsworth v. Dretke*, 401 F.3d 301, 306 (5th
Cir. 2005) (habeas case) (quoting *Kyles v. Whitley*, 514 U.S. 419,
437 (1995) (addressing alleged violation of *Brady v. Maryland*, 373
U.S. 83 (1963)).   But Threadgill is not relying on evidence known
to the prosecutor or to others acting on the State's behalf,
including the police, *in his case*.   He is relying on a supposed
obligation of the prosecutor in his case to contact another
prosecutor, in another independent governmental unit, who
prosecuted another case.   When asked at oral argument whether he
had authority for such a requirement, he conceded he had none apart
from a prosecutor's general duty to do justice in the case.   The
court is also aware that knowledge possessed by one sovereign
governmental unit can be imputed to an entirely separate sovereign.
*See Avila*, 560 F.3d at 308 (citing *United States v. Antone*, 603
F.2d 566, 570 (5th Cir. 1979)).   But while this determination is
made on a case-by-case basis in which the court analyzes "the
extent of interaction and cooperation between the two governments,"
Threadgill has made no attempt to show that there was any
interaction or cooperation of any kind between the District
Attorney's Offices of Navarro County and Limestone County.   Indeed,
the premise of his argument is that there was none and that the

State prosecutor *should have* initiated contact through a telephone inquiry.

3

Therefore, Threadgill has not demonstrated that the ruling of the state habeas court resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that its decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

IV

In ground three, Threadgill contends that he was denied due process because the trial court failed to charge the jury on the lesser-included offense of felony murder.

A

Although Threadgill's trial counsel did not request an instruction on felony murder or object to the trial court's failure to instruct the jury on this lesser-included offense, the TCCA addressed on direct appeal his contention that the trial court committed reversible error.[12]  The TCCA disagreed, concluding that

_____

[12]The TCCA addressed this ground as part of Threadgill's fourth point of error on direct appeal, which also complained of the trial court's failure to give an instruction on the lesser-included offense of murder. *Threadgill*, 146 S.W.3d at 665.  At oral argument, the court questioned whether Threadgill had exhausted this claim because he did not raise it in the state habeas court. Respondent's counsel acknowledged that the claim had been exhausted

the trial court did not abuse its discretion in concluding that there was no evidence that would have entitled Threadgill to an instruction on the lesser-included offense of felony murder. *Threadgill*, 146 S.W.3d at 666.

The TCCA applied the two-step test that governs the determination whether a charge on a lesser-included offense should be given. *Id.* at 665.[13] It concluded that the first step——"whether the offense is actually a lesser-included offense of the offense charged"——had been met because "[f]elony murder is a lesser-included offense of capital murder." *Id.* It then turned to the second step. The TCCA explained that "[t]here must be some evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense. The evidence must establish the lesser-included offense as a valid rational alternative to the charged offense." *Id.* The TCCA reasoned that "[t]he element distinguishing capital murder from felony murder is the intent to kill. Felony murder is an unintentional murder committed in the course of committing a felony

_____

because Threadgill presented it to the TCCA on direct appeal. Respondent's counsel was correct in making this concession. *See Hatten*, 570 F.3d at 605 ("Exhaustion requires that a petitioner first present the substance of his federal claims to the highest state court either through direct appeal or by state collateral review procedures." (citing *Morris v. Dretke,* 413 F.3d 484, 491 (5th Cir. 2005))).

[13]The two-step test applied in Texas "is consistent with the federal constitutional rule." *Aguilar v. Dretke*, 428 F.3d 526, 531 n.2 (5th Cir. 2005).

while capital murder includes an intentional murder committed in the course of robbery." *Id.* (citation omitted).   For Threadgill to have been entitled to an instruction on felony murder, there must have been some evidence that would have permitted the jury rationally to find that he had the intent to commit robbery but not to cause the death of McDonald, the victim.   *Id.*   After analyzing the trial evidence, the TCCA held that the trial court did not abuse its discretion in concluding that there was no evidence that would have permitted the jury rationally to find that Threadgill did not intend to kill McDonald when he fired at him at close range inside the car.   *Id.* at 666.

Threadgill maintains that the trial evidence supported an instruction on the lesser-included offense of felony murder, and he discusses in some detail in his petition, and explained at oral argument, the grounds for this argument.   Relying on *Beck v. Alabama*, 447 U.S. 625 (1980), and *Cordova v. Lynaugh*, 838 F.2d 764 (5th Cir. 1988), as well as similar Texas cases, Threadgill contends the TCCA's conclusions of law are contrary to, and unreasonable applications of, *Beck*, and that its decision that he was not entitled to a lesser-included offense instruction of felony murder is contrary to, and an unreasonable application of, *Beck*, because the evidence left some doubt with respect to the elements of capital murder.   Analyzing the Texas law of capital murder, Threadgill maintains that the evidence warranted such an

- 29 -

instruction.

B

Because Threadgill concedes as a predicate for his related ineffective assistance claim (ground four) that his trial counsel failed to request that the jury be charged on the lesser-included offense of felony murder, he is essentially arguing that it was constitutional error for the trial court not to give a lesser-included offense instruction *sua sponte*.

The court is unaware of any Supreme Court decision that holds that the requirement of such a charge is self-executing.  This is significant, because the phrase "clearly established Federal law, as determined by the Supreme Court of the United States," . . . refers to the holdings . . . of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.  In *Beck* the Court granted certiorari to decide this limited question:

> May a sentence of death constitutionally be imposed after a jury verdict of guilt of a capital offense, when the jury *was not permitted to consider* a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict?

*Beck*, 447 U.S. at 627 (emphasis added) (quotation marks omitted).  The Court's answer was tailored to the question presented.  It held that "if the *unavailability* of a lesser included offense instruction enhances the risk of an unwarranted conviction, [a

State] is constitutionally prohibited from withdrawing that option from the jury in a capital case." *Id.* at 638 (emphasis added). The Court stated: "Alabama's *failure to afford capital defendants the protection provided by lesser included offense instructions is unique in American criminal law.*" *Id.* at 635 (emphasis added). "The *Beck* opinion considered the alternatives open to a jury which is constrained by a preclusion clause and therefore unable to convict a defendant of a lesser included offense when there was evidence which, if believed, could reasonably have led to a verdict of guilt of a lesser offense." *Hopper v. Evans*, 456 U.S. 605, 610 (1982). In other words, *Beck* addressed the structural failure of a state statute even to permit an instruction on a lesser-included offense. And *Hopper* makes clear that lesser-included offense instructions are required only "when the evidence would have supported such a verdict." *Id.* (internal quotation marks omitted) (quoting *Beck*, 477 U.S. at 627). Accordingly, clearly established federal law, as determined by the Supreme Court, does not require that such an instruction be given despite the absence of a request or an objection.

The Fifth Circuit's interpretation of *Beck* and *Hopper* is not to the contrary. In *Cordova* the court stated:[14]

_____

[14]In *Dowthitt* the Fifth Circuit did evaluate on the merits the lack of a lesser-included offense claim despite the absence of an objection. *See Dowthitt*, 230 F.3d at 757 n.36. The panel's decision to conduct this evaluation does not appear, however, to be required by Supreme Court precedent, which does not mandate that a

> As explained in [*Hopper*], *Beck* stands for the
> proposition that the jury in a capital case
> *must be permitted to consider* a verdict of
> guilt of a noncapital offense in every case in
> which the evidence would have supported such a
> verdict.  Although *Beck*, strictly speaking,
> holds only that a state cannot impose a
> blanket ban on the giving of
> lesser-included-offense instructions in a
> capital case, we have consistently held that
> *Beck*'s holding applies when the state trial
> court *refuses* a lesser included offense
> instruction . . . .  In other words, due
> process and the Eighth Amendment require that,
> in a capital case, the jury *must be allowed to
> consider* a lesser included noncapital offense
> if the jury could rationally acquit on the
> capital crime and convict for the noncapital
> crime.

*Cordova*, 838 F.2d at 767 (emphasis and ellipsis added; citations,

quotation marks, and brackets omitted).[15]   And subsequent Fifth

Circuit habeas decisions "have consistently held that a state trial

court may not, under *Beck*, *refuse* a lesser-included-offense

instruction if the jury could rationally acquit on the capital

crime and convict for the noncapital crime." *East v. Scott*, 55

F.3d 996, 1005 (5th Cir. 1995) (emphasis added; internal quotation

marks omitted) (quoting *Cordova*, 838 F.2d at 767).   "We have

applied *Beck* to cases in which a state trial court *refuses* a

lesser-included-offense instruction." *Creel*, 162 F.3d at 389

(citing *Cordova*, 838 F.2d at 767).   In *Cordova* itself the

_____

lesser-included offense instruction be given *sua sponte*.

[15]*Cordova* has effectively been overruled in part on other
grounds. *See Vanderbilt v. Collins*, 994 F.2d 189, 195 (5th Cir.
1993).

defendant's counsel unsuccessfully objected to the failure to include an instruction on the lesser-included offense. *Cordova*, 838 F.2d at 766.[16]

Because clearly established federal law, as determined by the Supreme Court, does not require a lesser-included offense instruction absent a request or objection, the state habeas court's findings are not contrary to, or an unreasonable application of, clearly established federal law.

C

Assuming *arguendo* that Threadgill can qualify for habeas relief despite the absence of a requested jury instruction or objection, the court holds that the state habeas court did not unreasonably apply *Beck* or unreasonably determine the facts in light of the evidence presented.[17]

---

[16]In a more recent example——*Reed v. Quarterman*, 504 F.3d 465 (5th Cir. 2007)——the panel granted a COA on a claim of *Beck* error. *Id.* at 492. But in *Reed* the defendant requested an instruction on the lesser-included offense of first degree murder, which the trial court denied. *Id.* at 489-90.

[17]And to the extent Threadgill contends, as he seemed to suggest at oral argument, that the TCCA was simply wrong in rejecting his point of error on direct appeal, he is essentially arguing that the TCCA incorrectly decided a question of Texas law. He has not established how an incorrect decision on state law——assuming there was one——entitles him to federal habeas relief. It is well settled that

> [i]n order to obtain relief under 28 U.S.C. § 2254, [a petitioner] must show that the reasoning of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined

As noted, under *Beck* the lesser-included instruction is required "if the jury could rationally acquit the defendant on the capital crime and convict on the non-capital crime." *Aguilar v. Dretke*, 428 F.3d 526, 531 (5th Cir. 2005) (citing *Cordova*, 838 F.2d at 767). Analyzing the trial evidence, the TCCA considered whether "the record contain[ed] some evidence that would permit a rational jury to find that the defendant is guilty only of the lesser offense." *Threadgill*, 146 S.W.3d at 665. It recognized that "[t]here must be some evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense," and that "[t]he evidence must establish the lesser-included offense as a valid rational alternative to the charged offense." *Id*. It then focused on the element that distinguished capital murder from felony murder: intent to kill. The TCCA explained that, under Texas law, "[f]elony murder is an unintentional murder committed in the course of committing a felony while capital murder includes an intentional murder committed in the course of robbery." *Id*. "To be entitled to an instruction on felony murder there must be some evidence that would permit a jury rationally to find the defendant had the intent

---

by the Supreme Court of the United States."  .
. .  An error in state law is insufficient to
warrant habeas relief.

*Solis v. Dretke*, 107 Fed. Appx. 414, 415 (5th Cir. 2004) (per curiam) (quoting 28 U.S.C. § 2254(d)(1) and citing *Manning v. Warden, La. St. Penitentiary*, 786 F.2d 710, 711 (5th Cir. 1986)).

to commit robbery but not to cause the death of the victim." *Id.*
The TCCA located no such evidence.  "The evidence reflects that
[Threadgill] ran up to the car, leaned in, and fired two shots, the
second one into the backseat where the victim was seated." *Id.*  It
rejected Threadgill's contention that some evidence suggested the
shooter did not even know the victim was in the car.  "Although the
shooter was standing outside of the car when he fired the shots, he
was leaning into the car with his gun." *Id.*  And "[t]he witness
denied defense counsel's suggestion that the victim was lying down
or stretched out on the seat." *Id.* at 666.  Accordingly, the TCCA
concluded that "[t]he trial court did not abuse its discretion in
concluding that there was no evidence that would permit a jury
rationally to find that [Threadgill] did not intend to kill the
victim when he fired at him at close range inside the car." *Id.*

Threadgill relies on several arguments to contend that the
TCCA's analysis is not supported by the trial record.  But the
TCCA's decision must not merely be incorrect (assuming it is); it
must also be an objectively unreasonable application of federal
law.  He has failed to demonstrate that the TCCA's conclusions of
law are contrary to, or an unreasonable application of, *Beck*, that
its decision that Threadgill was not entitled to a lesser-included
offense instruction on felony murder is contrary to, or an
unreasonable application of, *Beck*, or that the TCCA unreasonably
determined the facts in light of the evidence.

V

In grounds one, four, and five, Threadgill maintains that he was denied effective assistance of counsel.

"If a state court has already rejected an ineffective-assistance claim, a federal court may grant habeas relief if the decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (per curiam) (quoting 28 U.S.C. § 2254(d)(1)).  "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." *Id.* (citing cases).

"The clearly established federal law that sets the standard for ineffective assistance claims is [*Strickland*]." *Catalan*, 315 F.3d at 492.  Under the *Strickland* test the following showing is necessary to demonstrate ineffective assistance:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.

> To establish ineffectiveness, a defendant must
> show that counsel's representation fell below
> an objective standard of reasonableness.  To
> establish prejudice he must show that there is
> a reasonable probability that, but for
> counsel's unprofessional errors, the result of
> the proceeding would have been different.  A
> reasonable probability is a probability
> sufficient to undermine confidence in the
> outcome.

*Williams*, 529 U.S. at 390-91 (citations and quotation marks
omitted) (quoting *Strickland*, 466 U.S. at 688, 694).  If Threadgill
fails to meet either prong of the *Strickland* test, the court need
not address the other component.  *See Strickland*, 466 U.S. at 697;
*Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997). ("Failure to
prove either deficient performance or actual prejudice is fatal to
an ineffective assistance claim.").

Courts "must indulge a strong presumption that counsel's
conduct falls within the wide range of reasonable professional
assistance[.]" *Strickland*, 466 U.S. at 689.  Courts must "not fall
prey to 'the distorting effect of hindsight' but must be 'highly
deferential' to counsel's performance." *Carter*, 131 F.3d at 463
(quoting *Strickland*, 466 U.S. at 689-90).  Moreover, when a
defendant seeks a writ of habeas corpus based on ineffective
assistance,

> [i]t bears repeating that the test for federal
> habeas purposes is *not* whether [petitioner]
> made that showing.  Instead, the test is
> whether the state court's decision—that
> [petitioner] did *not* make the *Strickland*-
> showing—was contrary to, or an unreasonable
> application of, the standards, provided by the

> clearly established federal law (*Strickland*),
> for succeeding on his IAC claim.

*Schaetzle*, 343 F.3d at 444.

Accordingly, to succeed in this court on an ineffective assistance claim, Threadgill must at a minimum show that the state habeas court's decision was contrary to, or an unreasonable application of, the standards provided by the clearly established federal law (i.e., *Strickland*).

## VI

In ground one, Threadgill contends that he was denied effective assistance of counsel under the Sixth and Fourteenth Amendments when his trial counsel failed to adequately investigate and challenge[18] the State's use of an extraneous offense——the Limestone County aggravated assault charge——to enhance his sentence.

## A

During the punishment phase, the State introduced evidence that Threadgill had committed the extraneous offense of shooting

---

[18]By "challenge" the State's use of this evidence, Threadgill does not appear to contend that his counsel failed to adequately "object."  Although at one point Threadgill notes that, after his counsel filed a motion to suppress the evidence, they did not further object to the evidence or refer to the suppression motion, *see* Pet. 9-10, in 20 pages of argument, Pet. 8-27, he focuses on his trial counsels' failure to adequately investigate the Limestone County charge and to refute the evidence with proof that they could have developed through an adequate investigation.  In other words, by "challenge" he appears to focus on substantive opposition to the evidence.

Martin and that he had been indicted in Limestone County for aggravated assault.   Forge testified that he had been present on June 19, 1998 at a gathering at Comanche Crossing in Limestone County, that he had seen Martin shot, and that he had seen the person who shot him. Forge stated that he identified the shooter through a picture lineup presented by Deputy Beck.   And he acknowledged that he had given Deputy Beck a statement in which he identified Threadgill as the person who shot Martin.   He then testified that he was positive in his identification of the person who shot Martin.  He also acknowledged on cross-examination that he knew the charge had been dismissed.

The State then called Deputy Beck as a witness.   Deputy Beck testified that he had investigated the shootings and obtained a statement from Forge.   He also stated that Forge had identified Threadgill from a photo lineup, that Forge was positive in his identification and in no way hesitant, and that Forge had never recanted the identification.   Deputy Beck also testified that Threadgill was charged with the offense, but the charge was later dropped.   He also stated that he believed Threadgill had been jailed for one year, although he could not be exact, and that most of the victims and perpetrators of the Comanche Crossing incident had extensive criminal backgrounds.   On cross-examination, defense counsel introduced through Deputy Beck the motion and order dismissing the Limestone County charge.   Defendant's exhibit 11

contained the following motion filed by the prosecutor: "Now comes the County Attorney on this the 27th day of July, 1999 and asks the Court to dismiss the above entitled and numbered Criminal Action, for the following reasons, to-wit: CONFLICTING EVIDENCE."  Tr. 20:Exh. 11.

During closing argument, the State prosecutor referred to the Limestone County charge and criticized "prosecutors that don't take these cases and take them seriously and take them to juries."  He implied that the decision not to prosecute Threadgill in Limestone County was because the victim was "probably nobody" who "probably had a criminal record."  The State's attorney urged the jury not to act similarly, asserting that Threadgill had "shot another guy." Tr. 17:115.

B

According to the state habeas record, Dunn hired a licensed private investigator, Brian K. Ingram ("Ingram"), to attempt to ascertain what testimony, if any, three proposed State witnesses—Deputy Beck, Forge, and Ronald Paul Jackson, Jr. ("Jackson")—could offer.  State Hab. Rec. 128.[19]  Ingram provided defense counsel a written report dated July 12, 2002.  Although Threadgill acknowledges that Ingram conducted an investigation, he maintains that it was constitutionally inadequate.  Citing the

---

[19]Citations to "State Hab. Rec." are to the record of the state habeas proceedings.

*Strickland* test, American Bar Association Guidelines cited in Supreme Court cases, and *Rompilla v. Beard*, 545 U.S. 374 (2005), Threadgill argues, in pertinent part, that his counsel could have proved through an adequate investigation that he did not shoot Martin.  He complains that his counsel failed to contact the primary information sources (the Limestone County District Attorney and Threadgill's defense counsel in that case) to learn the real reason the Limestone County charge was dismissed and, if the reason was in fact conflicting evidence, what was the conflicting evidence.  Threadgill maintains that Dunn conducted a limited investigation and did not follow up on any of the information developed, and even the limited investigation revealed that the only proof against Threadgill that he had committed the Limestone County shooting was Forge's testimony.

Threadgill contends that had Dunn consulted Threadgill's defense counsel in that case, H. Fred Neale, Esquire ("Neale"), he would have learned that there was significant evidence of Threadgill's actual innocence.  According to Neale's affidavit, he obtained reports that indicated the police believed the person who shot Martin was Jeremy Bonner ("Bonner").  It was only after Forge identified Threadgill in a photo lineup that he became a suspect.  For several reasons, Neale questioned the accuracy of Forge's identification.  Neale also developed evidence that Bonner told his mother that Threadgill was not at Comanche Crossing at the time of

the shooting.   Although Jackson told Neale he could identify Threadgill as the shooter, Neale doubted his story for several reasons.   Neale spoke to Jeremiah Hubbard ("Hubbard"), who had been present at the time of the shooting.   Hubbard knew Threadgill and stated that he did not shoot Martin.   Neale also interviewed Tracy Jackson ("Tracy") by telephone.   Tracy told him she saw the incident at Comanche Crossing, provided details of what happened, and stated that Threadgill had not been present.   Neale then shared this information with the Limestone County District Attorney, who prepared a motion for dismissal.   Neale understood from his conversation with the District Attorney that the charges were dismissed because of the information Neale found and additional information that his office received that indicated Threadgill was not the shooter.[20]

In sum, Threadgill maintains that an adequate investigation would have developed evidence that would have cast doubt on the State's assertion that he shot Martin, thereby precluding the State from proving beyond a reasonable doubt[21] the facts necessary to

_____

[20]Threadgill also relies on an affidavit of Clay Jenkins ("Jenkins") and an unsworn statement of Natalie Rocha ("Rocha"), which he has attached to his federal habeas petition.   Respondent objects to the Jenkins affidavit as containing hearsay and to the Rocha statement as unsworn.   Because the court is deciding Threadgill's claim based on the prejudice prong, it will assume *arguendo* that it can consider the evidence from Jenkins and Rocha. Even with this evidence, however, Threadgill's claim fails.

[21]Threadgill asserts at one point that the State had the burden of proving the extraneous offense beyond a reasonable doubt.   Pet.

obtain a "yes" answer to Special Issue No. 1, i.e., to prove future dangerousness.[22]   Without this offense, in Threadgill's view, the State was relegated to relying on the offense for which he was on trial, misdemeanor assaults at least six years old, a resisting arrest conviction almost ten years old, and vague allegations of threats against other inmates that allegedly occurred while he was incarcerated on the Limestone County charge.   The aggravated assault charge, by contrast, involved a shooting with a firearm, and Threadgill had been released only one year before he murdered McDonald.   He contends that had his counsel reviewed the Limestone County file, they would have identified the prosecutor and the defense attorney (Neale); learned from the prosecutor the identity of Natalie Rocha ("Rocha"), an eyewitness who asserted that Threadgill did not shoot Martin; and obtained from the Limestone County District Attorney, Neale, and Rocha compelling evidence of Threadgill's actual innocence.   He argues that his counsels' deficient performance resulted in their not presenting evidence of his actual innocence and their failing to prevent the State prosecutor from introducing inaccurate and misleading evidence to

_____

20.   The court disagrees for the reasons explained *supra* at note 11.

[22]As required by Tex. Code Crim. Proc. Ann. art. 37.071 § 2(b)(1) (Vernon 2006), Special Issue No. 1 asked the jury: "Do you find from the evidence, beyond a reasonable doubt, that there is a probability  that the defendant would commit criminal acts of violence that would constitute a continuing threat to society?"

support the request for the death penalty. Threadgill also posits
that his counsel should have known that the State did not intend to
accept the dismissal at face value and that it was necessary to
develop a defense to the allegations, particularly given the
violent nature of the Limestone County shooting and the fact that
it was the only allegation of a prior violent felony offense or of
a violent offense alleging a shooting. He contends that had the
jury heard evidence of his actual innocence of the Limestone County
charge, there is a reasonable probability that it would not have
answered the special issue in the State's favor.

C

The state habeas court found that Threadgill's trial counsel
adequately explored and investigated the Limestone County
aggravated assault case, State Hab. Ground No. 1 Find. No. 2;[23] the
evidence the jury considered in connection with this extraneous
offense was inconsequential compared to other evidence of
Threadgill's misconduct, State Hab. Ground No. 1 Find. No. 3; the
jury was fully aware of the conflicting nature of the testimony,
and it was just as likely as not that the testimony had no impact
on the verdict, State Hab. Ground No. 1 Find. No. 4; and counsels'
decision not to expend valuable time on relatively insignificant
issues was understandable, State Hab. Ground No. 1 Find. No. 5.
The state habeas court made the following pertinent legal

---

[23]This was ground one of his state habeas application.

conclusions: the extraneous offense was so insignificant in light of the entire body of evidence that the admission did not prejudice Threadgill, State Hab. Concl. No. 1; that defense counsel did not dedicate a greater effort to the investigation or opposition to the admission of the Limestone County event is not indicative of ineffective assistance of counsel, State Hab. Concl. No. 2; and defense counsels'[24] apparent decision to focus the defense on more substantive issues than the Limestone County event was appropriate and did not demonstrate ineffective assistance, State Hab. Concl. No. 3.[25]

D

Threadgill contends that § 2254 does not apply to ground one of his petition because the TCCA merely adopted the findings and conclusions submitted by the State. He relies for this contention on the conclusory assertion that "the [TCCA] ceded its responsibility to apply objective, independent judicial judgment by merely adopting the FFCL submitted by the State of Texas." Pet.

---

[24]The state habeas court sometimes referred to defense counsel in the singular. For clarity and consistency, the court will refer to plural defense counsel.

[25]Threadgill also cites conclusions of law nos. 10, 11, and 12. These conclusions more generally held that any errors by the court or counsel did not rise to the level of a constitutional breach of due process or of fundamental fairness, the sentencing proceedings were fair and consistent with existing law, and the State's case was subject to adequate adversarial testing by defense counsel at both phases of trial.

12.[26]   This argument lacks force, at least for the reason that
Threadgill by his conclusory assertion has "[made] no showing that
the state habeas court failed independently to consider and
evaluate the state's proposed findings before adopting them as its
own." *Hudson v. Quarterman*, 273 Fed. Appx. 331, 335 (5th Cir.)
(rejecting similar claim), *cert. denied*, ___ U.S. ___, 129 S.Ct.
621 (2008).   Moreover, the Fifth Circuit has rejected the
contention that habeas findings adopted verbatim from those
submitted by the State are not entitled to deference.   *See id.*
(rejecting assertion that deference was not required because state
court adopted respondent's proposed findings and conclusions)
(citing *Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999)); *see
also Trevino*, 168 F.3d at 180 (rejecting due process challenge to
state habeas court's verbatim adoption of district attorney's
proposed findings of fact and conclusions of law only three hours
after they were filed with court); *James v. Collins*, 987 F.2d 1116,
1122-23 (5th Cir. 1993) (rejecting pre-AEDPA challenge to according
deference to habeas findings that Texas court adopted verbatim).

Threadgill also maintains that, because the affidavits of Dunn

---

[26]Having examined the state habeas record and compared what
appears to be a version of the State's proposed findings of fact
and conclusions of law with the state habeas court's findings and
conclusions, it is not apparent that the state habeas court in fact
merely adopted the State's findings and conclusions.   Because it
does not affect this court's decision, however, the court will
assume *arguendo* that the state habeas court merely adopted the
State's proposed findings and conclusions.

and Jones were silent as to this claim, and because respondent relies in his answer solely on the report of the private investigator attached to Threadgill's habeas application, the state court's determination rests on a factual determination that is not supported by any evidence, and this court can grant habeas relief without regard to any limitations imposed by § 2254(d). Threadgill contends in the alternative that the state court's ruling and its legal conclusions are contrary to, and unreasonable applications of, federal law, specifically *Strickland* and *Rompilla*. He asserts that his counsel knew the following: that the State intended to seek the death penalty by proving the special issue on future dangerousness; that the State would seek to establish through evidence of the Limestone County aggravated assault with a deadly weapon that Threadgill would commit criminal acts of violence that would constitute a continuing threat to society, even though he was not convicted of that offense; and that the court file reflecting that the aggravated assault had been dismissed was a public document. Regarding the state court's fact findings, he contends that there is no presumption of correctness and that the findings are objectively unreasonable in light of the evidence presented in the state-court proceeding, and that the state court adjudication resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court adjudication (and that an evidentiary hearing is needed) because:

the factual recitals have no support in the trial or state habeas record and are purely conclusory; the state habeas record proves by clear and convincing evidence that the Limestone County charge was not adequately investigated, and, therefore, evidence of his innocence was not presented; the Limestone County charge was not inconsequential when compared with other, unstated evidence of his misconduct, because the other misconduct on which the State relied was the offense for which he was on trial, a felony conviction for possession of a controlled substance, a state jail felony for burglary of a building, and various other misdemeanor convictions; there is no evidence that the jury was "fully aware" of the conflicting evidence of guilt about the Limestone County charge because his counsel never fully investigated and presented the facts and circumstances of the shooting; and there is no evidence that trial counsel made a reasoned decision not to expend valuable time on relatively insignificant issues given that Dunn and Jones never addressed this in their affidavits.   Regarding the state court's conclusions of law, he contends the conclusions are contrary to, and an unreasonable application of, *Strickland* and *Rompilla* because trial counsels' performance was deficient, and there is a reasonable probability that the outcome would have been different.

E

1

The court will assume *arguendo* that Threadgill can demonstrate deficient performance and will focus on the prejudice prong of the *Strickland* test.[27]   "The petitioner must affirmatively prove, not

---

[27]In so doing, the court recognizes that

> [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time.  Accordingly, we must be particularly wary of arguments that essentially come down to a matter of degrees. Did counsel investigate enough? Did counsel present enough mitigating evidence?  Those questions are even less susceptible to judicial second-guessing.

*Skinner v. Quarterman*, ___ F.3d ___, 2009 WL 2026206, at *4 (5th Cir. July 14, 2009) (initial brackets added; citations, quotation marks, brackets, and ellipsis omitted).   In this case, Threadgill's counsel *did* conduct an investigation of the Limestone County shooting.   They hired a licensed private investigator to attempt to ascertain what testimony, if any, State's witnesses Deputy Beck, Forge, and Jackson could offer during the punishment. During a two-day period the investigator met with Deputy Beck concerning the Limestone County shootings, and he determined that the incident had resulted in the arrest and indictment of Threadgill and the subsequent dismissal of the charges due to conflicting evidence.   The investigator made certified copies of the aggravated assault file and of felony convictions of other State witnesses and viewed the complete file of the aggravated assault case kept by the Limestone County District Attorney.   He prepared a written report of what he had learned about the details of the shootings, the criminal backgrounds of the witnesses, shooters, and victims, and how Forge and Jackson had identified Threadgill.   And the investigator opined that it was unlikely that Forge and Jackson could identify Threadgill.

But despite the fact that Threadgill's counsel, unlike the defense counsel in *Rompilla*, actually investigated the Limestone County charge and the pertinent files, and that one could contend

- 49 -

just allege, prejudice.   If the petitioner fails to prove the prejudice component, the court need not address the question of counsel's performance." *Skinner v. Quarterman*, ___ F.3d ___, 2009 WL 2026206, at *1 (5th Cir. July 14, 2009) (internal quotation marks omitted) (quoting *Day v. Quarterman,* 566 F.3d 527, 536 (5th Cir. 2009)); *Blanton*, 543 F.3d at 235 ("[Petitioner's] *Strickland* claim fails if he cannot establish either the deficient performance or prejudice prong; a court need not evaluate both if [ ] he makes an insufficient showing as to either."").   As noted, to prove prejudice, Threadgill must show that there is a reasonable probability that, but for his counsels' unprofessional errors, the result of the proceeding would have been different.

> The petitioner has the affirmative duty to prove that but for counsel's deficient assistance, there is a reasonable probability that the outcome of the proceeding would have been different.  If the petitioner brings a claim of ineffective assistance with regard to the sentencing phase, he has the difficult burden of showing a reasonable probability that the jury would not have imposed the death sentence in the absence of errors by counsel.

---

that he is relying on "arguments that essentially come down to a matter of degrees," the court will assume that his counsel performed deficiently in this respect.  His lawyers do not appear to have followed up on leads contained in the records, including the investigator's opinions questioning whether the witnesses could actually have identified Threadgill as the person who shot Martin. And apart from introducing the motion and order of dismissal as a trial exhibit, his counsel do not appear to have used at trial other information that the investigator developed.

> A reasonable probability is a probability that
> is sufficient to undermine confidence in the
> outcome.

*Riley v. Cockrell*, 339 F.3d 308, 314 (5th Cir. 2003) (citations and quotation marks omitted) (quoting *Williams*, 529 U.S. at 391, and *Carter*, 131 F.3d at 463).

Unless Threadgill can demonstrate that the state habeas court's finding that the jury was fully aware of the conflicting nature of the testimony, and it was just as likely as not that the testimony had no impact on the verdict, State Hab. Ground No. 1 Find. No. 4, and its conclusion that the extraneous offense was so insignificant in light of the entire body of evidence that the admission did not prejudice Threadgill, State Hab. Concl. No. 1, are contrary to, or an unreasonable application of, the standard provided by the clearly established federal law (i.e., the *Strickland* prejudice prong), he cannot prevail on ground one.

2

Threadgill contends he has made the required showing. He maintains that merely offering the dismissal document in evidence did not rebut the State's allegations; that reasonable counsel would have known that the State did not intend to accept the dismissal at face value; and that a reasonable investigation was necessary to refute the State's explanation for the dismissal. He argues that it was necessary to refute the Limestone County charge, in particular, because of the similarity of the violent nature of

that offense and of the murder for which he was on trial, and the fact that the Limestone County charge was the sole alleged extraneous offense alleging an act of violence or of shooting another person. Threadgill posits that had the jury heard evidence that he was actually innocent of the Limestone County charge, it would have answered the future dangerousness special issue "no." Additionally, all the prior offenses, except one for marijuana possession, were over five years old. The State introduced evidence that Threadgill had fought with another detainee while jailed on the Limestone County charge, that he had been disciplined for threatening other inmates with bodily harm, and that he had a bad reputation for being peaceful and law abiding. Threadgill asserts that without the Limestone County charge, the jury could have inferred a lack of specific intent to kill. Under the special issue, since the State must prove beyond a reasonable doubt that he would in all probability commit acts of violence in the penitentiary, thus posing a continuing threat to society, there is a reasonable probability that the jury would have decided the case differently had it heard evidence of his actual innocence of the Limestone County charge. This is sufficient, he maintains, to undermine confidence in the outcome.

                                    3

    The court holds that Threadgill has not made the required showing. At trial, the State offered extensive evidence of

Threadgill's criminal background, including misdemeanor convictions for assault, resisting arrest, criminal trespass, criminal mischief, and possession of marijuana. Tr. 19:Exhs. 25-31. It introduced evidence of a felony conviction for possession of a controlled substance and a state jail felony for burglary of a building. Tr. 19:Exhs. 23-24. It also offered proof from ten witnesses——including law enforcement officers and public officials——who testified that Threadgill had a bad (or very bad) reputation for being a peaceful and law-abiding citizen. It adduced proof that he had been disciplined for fighting in jail as recently as August 11, 2001[28] and on September 4, 2001 for threatening other people in the jail with bodily harm. Included as well in the State's punishment-phase case was evidence of the Limestone County shooting, that Threadgill (according to Forge) was the shooter, that the prosecution had moved for dismissal of the charges due to conflicting evidence, and that most of the perpetrators and victims in the Limestone County incident had extensive criminal records.

Had Threadgill's trial counsel done what he says they should have, the jurors would still have heard all of this evidence. In addition, they would perhaps have heard from a handful of defense witnesses who would have contradicted Forge's testimony and

---

[28]He was also disciplined for wearing a green jumper rather than an orange jumper, which was thought to present a security risk.

testified that Threadgill did not shoot Martin.  But the jurors already knew there was conflicting evidence about whether Threadgill had shot Martin.  They knew that the Limestone County District Attorney had cited the conflicting evidence when he moved to dismiss the aggravated assault charge against Threadgill. Adding these witnesses would not have changed the mountain of evidence that the State offered about Threadgill.[29]  And the testimony of these additional defense witnesses would not have materially changed what the jurors already knew in particular about the Limestone County incident: that the prosecutor had moved to dismiss the charge due to conflicting evidence, meaning that the Limestone County District Attorney was aware of evidence that Threadgill *did* shoot Martin, but he was also aware of evidence that Threadgill *did not* shoot him.  When the evidence that the State offered, and the additional proof that Threadgill says should have been presented, are viewed holistically, Threadgill has failed to show that there is a reasonable probability——a probability sufficient to undermine confidence in the outcome——that the result of the proceeding would have been different.  He has not

---

[29]Threadgill's habeas counsel contended that the critical difference between the evidence offered at trial and the proof that Threadgill's trial counsel should have offered is that, had the evidence been introduced, the State could not have proved the extraneous Limestone County charge beyond a reasonable doubt.  As discussed *supra* at note 11, the court rejects the assertion that it was necessary to prove the extraneous offense beyond a reasonable doubt.

demonstrated that the addition of this testimony to a mountain of adverse proof——proof that already took into account that the Limestone County charge was surrounded by conflicting evidence——would have led the jurors to answer the special issue on future dangerousness "no" rather than "yes."

Accordingly, Threadgill has failed to show that the state habeas court's decision on the prejudice prong was contrary to, or an unreasonable application of, the standards provided by the clearly established federal law for succeeding on an ineffective assistance claim. *See, e.g., Blanton*, 543 F.3d at 238 ("[Petitioner] must also show that the state habeas court reached an unreasonable conclusion as to prejudice.").

VII

In ground four, Threadgill asserts that he was denied effective assistance of counsel under the Sixth and Fourteenth Amendments when his trial counsel failed to request that the jury be charged on the lesser-included offense of felony murder.[30]

---

[30]Threadgill acknowledges that his trial counsel *did* request an instruction on the lesser-included offense of murder. Relying on *Schad v. Arizona*, 501 U.S. 624 (1991), the Fifth Circuit has pointed out that when an instruction on *some* lesser-included offense is given, the *Beck* problem falls away.

> In *Schad* the trial court gave a jury instruction for the non-capital offense of second-degree murder. The petitioner argued that the jury should have been given an instruction for simple robbery. The *Schad* Court rejected the petitioner's argument, concluding that as long as the jury had an

A

The state habeas court found that this issue, although asserted as trial court error, was considered and specifically rejected by the TCCA on direct appeal.   State Hab. Ground No. 6 Find. No. 2.[31]   It made the legal conclusion that an instruction on felony murder was improper, and that a so-called failure to request such an instruction did not constitute ineffective assistance. State Hab. Concl. No. 9.[32]

Threadgill contends the state habeas court's findings are objectively unreasonable and that a hearing is needed.   He posits that he is entitled to habeas relief because the state court adjudication resulted in a decision that was based on an objectively unreasonable determination of the facts.   He specifically contends that there was considerable evidence adduced at trial to require the instruction on the lesser-included offense,

---

option other than capital conviction or acquittal, even if that third option was second-degree murder and not robbery, the jury's capital murder verdict did not implicate a *Beck* violation.

*Mathis v. Dretke*, 124 Fed. Appx. 865, 873 (5th Cir. 2005) (per curiam) (denying COA).   It is therefore questionable whether Threadgill has a viable *Beck* claim given that his counsel requested that a lesser-included offense instruction be given, albeit not the one  Threadgill maintains they should have requested.

[31]This was ground six in the state habeas application.

[32]As he did regarding ground one, Threadgill also cites conclusions of law nos. 10, 11, and 12.

and that the TCCA did not address whether there was, but instead decided only that the trial court had not abused its discretion in finding that the evidence was insufficient to require that the instruction be given.  Essentially, Threadgill argues (relying as well on the reasons he advanced in support of ground three) that the TCCA erred in concluding that the instruction was not required.

B

Threadgill's counsel could not have been constitutionally ineffective if a request or objection would not have been granted. *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (holding that failure to make frivolous objection does not cause counsel's performance to fall below objective standard of reasonableness) (citing *Sones v. Hargett*, 61 F.3d 410, 415 n.3 (5th Cir. 1995)); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections"). The TCCA held that Threadgill was not entitled to an instruction on the lesser-included offense of felony murder.  *Threadgill*, 146 S.W.3d at 665-66.  And the failure of Threadgill's counsel to request an instruction or object does not support habeas relief because the TCCA considered this claim on the merits and rejected it and, for the reasons explained *supra* at § IV(C), its decision that Threadgill was not entitled to an instruction on the lesser-included offense is not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme

Court of the United States.   Threadgill has therefore failed to show that the state habeas court's decision on the deficient performance prong was contrary to, or an unreasonable application of, the standards provided by clearly established federal law for succeeding on an ineffective assistance claim.   The court need not address the prejudice prong.

VIII

Finally, in ground five, Threadgill maintains that his rights under the Sixth and Fourteenth Amendments were violated because his counsel failed to object to the testimony of Dr. Clayton and to effectively cross-examine and rebut her testimony.

A

In addressing Threadgill's application, the state habeas court initially found that the jury was capable of drawing its own conclusions as to the credibility of the State's expert based upon the totality of the evidence, State Hab. Ground No. 4 Find. No. 2,[33] and that Threadgill offered his own expert, thus presenting the jury with both sides' interpretations of the mental health evidence, State Hab. Ground No. 4 Find. No. 3.   In its conclusions of law, the state habeas court concluded that Threadgill's trial counsel presented adequate expert testimony in contradiction of that presented by the State's psychiatrist, and cross-examination of such experts is exceedingly difficult and may result in

_____

[33]This was ground four in the state habeas application.

admission of testimony more harmful than helpful, State Hab. Concl. No. 6, and that trial counsel were not ineffective in opposing psychiatric testimony offered by the State, and the response of defense counsel to such testimony can properly be considered trial strategy, State Hab. Concl. No. 7.

After the state habeas court transmitted its findings and conclusions to the TCCA, the TCCA remanded the matter. It noted that Threadgill asserted that his trial counsel were ineffective for failing to prepare for and cross-examine Dr. Clayton, and failing to call his own mental health expert, Dr. Kessler, to rebut Dr. Clayton's testimony, but that trial counsel had not addressed these allegations in affidavits. *Ex parte Threadgill,* No. WR-61,645-01, 2005 WL 1208947, at *1 (Tex. Crim. App. May 18, 2005) (per curiam) (unpublished order). Because there was nothing in the record indicating why counsel chose not to cross-examine Dr. Clayton, to use Dr. Kessler for Dr. Clayton's cross-examination, or to re-call Dr. Kessler in rebuttal of Dr. Clayton's testimony, the TCCA remanded the cause to the trial court "so that the habeas corpus record can be supplemented with affidavits or testimony from counsel specifically responding to these allegations." *Id.* The TCCA directed the trial court to enter supplemental findings and to transmit the findings and supplemental evidence to the TCCA.

On remand, the state habeas court entered supplemental findings and conclusions. It found that defense counsel did not

specifically address the issue of future dangerousness with Dr. Kessler, the defense expert, because they were fearful that, if examined in detail, she would corroborate the State's assertions of continuing danger, State Hab. Ground No. 4 Supp. Find. No. 1; there was significant testimony regarding Threadgill's lengthy criminal history and record of antisocial behavior, State Hab. Ground No. 4 Supp. Find. No. 2; and defense counsel chose not to cross-examine Dr. Clayton, the State's expert, because they were fearful that such examination would afford the witness additional opportunities to bolster her testimony with additional comments related to Threadgill's criminal history and other acts of misconduct, State Hab. Ground No. 4 Supp. Find. No. 3. The state habeas court made the following legal conclusions: defense counsels' explanation of this aspect of the case is reasonable and competent, given the circumstances, State Hab. Supp. Concl. No. 1; defense counsels' strategy was designed to minimize repeated references to, and examples of, Threadgill's criminal history and other antisocial conduct, State Hab. Supp. Concl. No. 2; this conduct by counsel is a valid exercise of trial strategy and discretion, State Hab. Supp. Concl. No. 3; and this conduct by counsel does not constitute ineffective assistance, State Hab. Supp. Concl. No. 4. The TCCA adopted these supplemental findings and conclusions based on the state habeas court's findings and conclusions and on its own review of the record. *Ex Parte Threadgill*, No. WR-61,645-01, 2005 WL

2445431, at *1 (Tex. Crim. App. Oct. 5, 2005) (per curiam) (unpublished order).

Threadgill contends the state habeas court's findings of fact are objectively unreasonable in light of the evidence presented, and that the state court adjudication resulted in a decision based on an unreasonable determination of the facts in the light of the evidence presented.[34]  He maintains there is clear and convincing evidence that jurors give excessive weight to expert testimony, regardless of its reliability and veracity; there is clear and convincing evidence to refute that Threadgill did not engage in past and repeated acts of violence that would be predictors of his future dangerousness; his trial counsel allowed improper, inaccurate, and misleading testimony of Dr. Clayton to be introduced, without having made a *Daubert/Nenno/Kelly* challenge, including failing to object to Dr. Clayton's unscientific and unreliable opinion testimony that it was a 100% certainty that Threadgill was a future danger;[35] his trial counsel failed to object to improper, inaccurate, and misleading testimony about extraneous offenses; his trial counsel should have known that, had a *Daubert/Nenno/Kelly* challenge been made, this would have prevented

---

[34]He also contends an evidentiary hearing is warranted.

[35]To be fair, Dr. Clayton did *not* testify "that it was a 100% certainty." Pet. 61. This is Threadgill's characterization of her testimony based on the fact that she did not express her opinion "in terms of probability." *Id.* at 67.

Dr. Clayton from testifying; his trial counsel failed to require
Dr. Clayton to produce for inspection seven categories of
information required under *Nenno v. State*, 970 S.W.2d 549 (Tex.
Crim. App. 1998); his trial counsel knew or should have known that
Dr. Clayton's risk assessment opinion, made without personally
examining Threadgill, was eschewed in medical and legal literature;
his trial counsel were constitutionally ineffective because they
failed to object to and to preserve for post-judgment review the
testimony of Dr. Clayton pertaining to extraneous offenses; his
trial counsel were constitutionally ineffective in failing to
challenge the underlying data on which Dr. Clayton's opinion was
based; and his trial counsel were constitutionally ineffective
because they failed to cross-examine Dr. Clayton regarding
antisocial personality disorder and to rebut the testimony through
Dr. Kessler.  At oral argument, Threadgill's habeas counsel seemed
to narrow these contentions to the single argument that trial
counsel should at least have insisted on a Tex. R. Evid. 705
hearing to challenge the admissibility of Dr. Clayton's opinion
testimony.

                                   B

     Threadgill is not entitled to habeas corpus relief on this
ground.

     First, the Supreme Court of the United States and the TCCA
allow psychiatric predictions of future dangerousness.  *See*

                              - 62 -

*Barefoot v. Estelle*, 463 U.S. 880, 897-99 (1983), *overruled in part on other grounds*, *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  As the Fifth Circuit explained in *Johnson v. Cockrell*, 306 F.3d 249 (5th. Cir. 2002):

> precedent from the Supreme Court, Fifth Circuit, and Texas Court of Criminal Appeals unanimously support the conclusion that an objection to Dr. Grigson's testimony would have been frivolous.  Johnson's argument about the inadmissibility of Grigson's testimony is foreclosed by *Barefoot v. Estelle*, where the Supreme Court rejected the view that this type of evidence is inadmissable.  We also disagree that Johnson could have persuasively argued to the district court that *Daubert* or *Robinson* altered the admissibility of this type of evidence after *Barefoot*.  Johnson cites no authority questioning the continued validity of *Barefoot*.  And, more importantly, this Court has rejected the very argument that Johnson is making here.
> In addition, the Texas courts have repeatedly found psychiatric predictions of future dangerousness to be admissible.
> Because any objection to the admiss[i]bility of Grigson's testimony would have been overruled based on existing precedent, such an objection would have been futile.

*Id.* at 255 (some citations omitted).  Accordingly, an objection to the admissibility of Dr. Clayton's psychiatric predictions of future dangerousness would have been futile,[36] and Threadgill's counsel were not obligated to make futile objections or motions.[37]

─────────────

[36]There is no suggestion that Dr. Clayton lacked the professional credentials or competence to express such an opinion.

[37]Moreover, this court is barred by *Teague v. Lane*, 489 U.S. 288 (1989) (plurality opinion), from adopting Threadgill's argument

Nor would having sought a Tex. R. Evid. 705 hearing have made a difference.  The adverse outcome of the hearing would have been predictable under binding precedent.

Second, the opinion testimony about extraneous offenses on which Threadgill relies and that he highlights in his petition are found in two sentences.  In one, Dr. Clayton was asked what records and information she had evaluated.  Among other evidence of extraneous offenses, she stated: "And then I also received information about where the defendant had been charged with shooting two individuals in 19——June 1998, but the charges were later dropped."  Tr. 17:60-61.  In the other, she said she had received a report that Threadgill "had threatened a witness while he was in the jail."  *Id.* at 61.  The state habeas court found that the jury was capable of drawing its own conclusions as to the credibility of the State's expert based upon the totality of the evidence, State Hab. Ground No. 4 Find. No. 2; that defense counsel chose not to cross-examine Dr. Clayton because they were fearful that such an examination would afford her additional opportunities to bolster her testimony with additional comments related to Threadgill's criminal history and other acts of misconduct, State Hab. Ground No. 4 Supp. Find. No. 3; that defense counsels' strategy was designed to minimize repeated references to, and examples of, Threadgill's criminal history and other antisocial

on collateral review.  *See Johnson*, 306 F.3d at 255.

conduct, State Hab. Supp. Concl. No. 2; that this conduct by counsel was a valid exercise of trial strategy and discretion, State Hab. Supp. Concl. No. 3; and this conduct by counsel did not constitute ineffective assistance, State Hab. Supp. Concl. No. 4. Threadgill has not shown that the state court's decision that Threadgill did not make the *Strickland*-showing was contrary to, or an unreasonable application of, the standards provided by clearly established federal law, as determined by the Supreme Court of the United States.[38]

Third, Threadgill's counsel explained that they made a tactical choice not to challenge Dr. Clayton's opinion that Threadgill would be a future danger to society, including her opinion regarding antisocial personality disorder. Dunn averred that he did not want to cross-examine Dr. Clayton on her testimony that Threadgill would be a future danger to society

> because, in [his] opinion, cross-examination would have opened a door for her to explain why she felt that [Threadgill] would be a future danger to society and, with the past history of violent behavior as well as the prior convictions, it would have been a very fertile field for her to make a great explanation for future dangerousness.

---

[38]Moreover, regarding the first sentence at issue, the jury could easily have recalled that Threadgill had been charged with shooting one person, not two. And Dr. Clayton acknowledged that the charge against Threadgill had been dropped. Dr. Clayton did not testify that she had received evidence that Threadgill had in fact committed the shooting. As to the second passage, there was admissible evidence that Threadgill had engaged in threatening conduct while in jail.

State Hab. Supp. Rec. 4.

Fourth, Threadgill's lead counsel explained that they made a tactical choice not to call Dr. Kessler back to the stand to refute Dr. Clayton's testimony, which the State offered in rebuttal. According to Dunn, although Dr. Kessler testified that Threadgill's lack of remorse for the murder and antisocial personality disorders would not cause any problems in prison, she said she had not assessed Threadgill for future dangerousness. *Id.* Dunn had had discussions with Dr. Kessler before she testified, "and it was [his] belief that she felt from her evaluation and knowledge of the background of [Threadgill] that he would be a future danger." *Id.* Consequently, Dunn "glossed over that testimony and chose not to put her on the witness stand in rebuttal of Dr. Lisa Clayton." *Id.* Dunn did not call Dr. Kessler as a rebuttal witness "because [he] believed with severe cross-examination she would waffle to a degree of admitting, if not directly, indirectly that [Threadgill] in her medical opinion would be a future danger to society." *Id.*

Second chair counsel Jones corroborated Dunn's assessment. He recounted that Dr. Kessner's "testimony suggested that [Threadgill] had no remorse for the murder," "she communicated to [Dunn] and myself that she believed that [Threadgill] would be a future danger," and, "after discussing the matter we decided that [Threadgill] would not be well served by putting Dr. Kessler on the stand to rebut the testimony of Dr. Lisa Clayton." *Id.* at 6.

Jones also stated:

> Dr. Clayton testified that [Threadgill] was a
> future danger and we limited cross-examination
> due to [Threadgill's] past history of violent
> behavior and prior convictions.  We decided
> that it was not in [Threadgill's] best
> interest to allow her to elaborate on his
> violent past.  In addition we felt based on
> our conversations with Dr. Gilda Kessler that
> if she were called to rebut the testimony of
> Dr. Clayton, she may on cross-examination have
> alluded to the fact that she thought
> [Threadgill] was also a future danger to
> society.

*Id.*

"[A] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness[.]"  *Pondexter v. Quarterman*, 537 F.3d 511, 520 (5th Cir. 2008) (first brackets in original) (quoting *Crane v. Johnson*, 178 F.3d 309, 314 (5th Cir. 1999)), *cert. denied*, ___ U.S. ___, 129 S.Ct. 1544 (2009); *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) (holding that "[i]nformed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed." (quoting *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999))).  "Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices." *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993).  The Fifth Circuit "has consistently given great weight to trial counsel's judgment on strategy and approach."

*Pondexter*, 537 F.3d at 521.

Accordingly, Threadgill has failed to show that the state habeas court's decision was contrary to, or an unreasonable application of, the standards provided by the clearly established federal law for succeeding on an ineffective assistance claim.

                                    IX

In his petition, Threadgill makes a general request that the court expand the record to include the exhibits attached to his habeas petition and any other relevant evidence not included in the state application, including evidence adduced during discovery and during any evidentiary hearing. The court grants the motion with respect to the two exhibits attached to Threadgill's federal habeas petition. As explained *supra* at note 20, even if the court considers this evidence, these documents do not change the outcome of the case. The motion is otherwise denied because Threadgill has failed to establish a basis to expand the record.

                            *       *       *

Threadgill's habeas petition is denied, and this action is dismissed with prejudice by judgment filed today.

        **SO ORDERED**.

August 10, 2009.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

                                  - 68 -